UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| INTEC, INC., | : |
| | : |
|     Plaintiff/Counterclaim Defendant | : |
| | : Civil Action No. 1:2010-cv-22772 |
| v. | : |
| | : |
| MONSTER, INC., | : |
| | : |
|     Defendant/Counterclaimant | : |
| _____ | : |

**INTEC, INC.'S MOTION TO COMPEL**

Plaintiff/counterclaimdefendant Intec, Inc. ("Intec"), by and through its undersigned counsel, submits this motion to compel Defendant/counterclaimant Monster, Inc. ("Monster") to respond to outstanding discovery requests.

## FACTS

On March 12, 2012, Intec served a second set of document requests (Ex. 1) and interrogatories (Ex. 2) on Monster. Monster served its responses on April 16, 2012 (Exs. 3 and 4.) No responsive documents were served. In a May 1, 2012 letter (Ex. 5), Intec's counsel wrote Monster identifying deficiencies and misplaced objections in Monster's responses. Monster's counsel Christopher Passarelli sent an email (Ex. 6) the following day indicating that he and his co-counsel Robert Payne were unavailable and unable to respond, but were "in the process [of] gathering materials in response to Intec's request." Monster made its production on May 4, 2012, but did not address the issues raised in the May 1, 2012 letter. Intec's counsel subsequently attempted to discuss the issues raised in the May 1, 2012 letter by telephone with Mr. Payne on May 15, 2012, who advised that he was not willing to discuss the issues and would refer the matter to Mr. Passarelli, but did not advise that Mr. Passarelli was traveling and would be unable to respond. After not hearing from Mr. Passarelli, counsel for Intec emailed Mr. Payne again on May 16, 2012, who then advised that Mr. Passarelli was traveling and unable to respond. Despite Intec's efforts, Monster's counsel has not addressed the issues raised by Intec within the 30-day period of Local Rule 26.1(h)(1). Accordingly, Intec files this Motion.[1]

## ARGUMENT

Monster's responses are littered with boilerplate objections that Monster has not agreed to withdraw. "[J]udges in this district typically condemn boilerplate objections as legally inadequate or 'meaningless.'" *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) (citations omitted). These boilerplate objections are addressed below.

Monster objects to <u>each</u> discovery request as overly broad, unduly burdensome, not reasonably tailored, vague and/or ambiguous, or similar language. "Objections that state that a discovery request is 'vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are deemed without merit by this Court." *Guzman v. Irmadan, Inc.*, 249 F.R.D.

---

[1] Attachment A to the Court's Scheduling Order (DE 100) indicates that compliance with S.D. Fla. L.R. 26(h)(2) and (3) is not required given that Intec has attached the discovery requests and responses to its Motion.

399, 400 (S.D. Fla. 2008); *ABM Fin. Servs., Inc. v. Express Consolidation, Inc.*, 07-60294, 2007 WL 2572322, \*1 (S.D. Fla. Sept. 5, 2007). As to the few document request that point to specific language as vague and/or ambiguous, Monster does not explain why it is unable to understand common words and phrases. Representative is Monster's objection to the word "use" in Document Request No. 64 and Interrogatory No. 13. "Use" is a common term in trademark cases, is defined by the Lanham Act, and has been the subject of multiple briefs submitted by Monster in this case. Other terms such as "development," "expressions," "discussions," "representations made to third parties," "commercial activity," to name just a few, are clear on their face or easily ascertainable from the plain meaning of the words themselves. *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 690-91 (S.D. Fla. 2010). Monster has failed to meet its burden of showing why these terms are vague or ambiguous. *See id.*

Monster also objected to almost every discovery request as irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. It is Monster's burden to demonstrate specifically how each request is unreasonable or not relevant. *Adelman*, 276 F.R.D. at 689. Monster's boilerplate language fails to satisfy this requirement. *Travelers Indem. Co. of Conn. v. Philips Med. Sys.*, No. 07-23246-CIV, 2008 WL 4534259, \*1 (S.D. Fla. Oct. 7, 2008).

Monster asserted a boilerplate objection to a majority of the document requests, *e.g.,* Document Request Nos. 64-67, 72, 73, 75-78, 83-89, 96, 98, 101, and 106-122, and Interrogatory No. 13 as seeking documents that are "equally available" or "publicly available" to Intec. "[M]erely because an item may be available from another source is not a proper objection" to discovery. *Adelman*, 276 F.R.D. at 699 (citing *Central Transport Int'l, Inc. v. Global Advantage Distrib., Inc.*, No. 06-401, 2007 WL 3124715, \*2 (M.D. Fla. Sept. 11, 2007)). If these documents are in Monster's possession or control, Intec is entitled to them. *Molinos Valle Del Cibao v. Lama*, No. 07-23066-CIV, 2008 WL 3850807, \*2 (S.D. Fla. 2008).

Monster's boilerplate objections to several document requests, for example Document Request Nos. 68-70, 97, on the ground of confidentiality or "commercially sensitive information" are inappropriate. It is "well settled that there is no absolute privilege for trade secrets or other confidential information." *Adelman*, 276 F.R.D. at 692. "Confidential" documents are not immune from discovery. *Id.* at 692 n.5 (citations omitted). Also, a protective order which Monster agreed to was entered by the Court, rendering these objections moot.

Monster objects that Intec has not tailored its requests "with adequate specificity to identify the documents or things which presently exist" or to set them forth in a "particular and readily searchable category for identification." One of the reasons for discovery is to allow the propounding party to obtain documents of which it has no access to, and therefore awareness of. It is unreasonable to expect Intec to specifically identify the documents it wants when Intec has not been provided with a comprehensive list of documents in Monster's possession. Further, Intec does not know how Monster categorizes its documents, and even if it did, Intec is not required to craft its document requests to conform to Monster's "readily searchable categories" of stored information. Further, as to Monster's assertion that certain requests "assume facts not in evidence," there are no facts in evidence. There has not been a trial. Intec also is not required to wait until Monster makes its pretrial disclosures, which were made long ago, to receive its discovery.

Finally, each response starts with the boilerplate prefatory statement "[n]otwithstanding, and without waiving said objections." Such responses are expressly proscribed by this district's local rules and precedent. *ABM Fin. Servs.*, 2007 WL 2572322, at *2.

Monster should be required to withdraw all objections other than attorney-client privilege and to produce whatever documents it has withheld based on its objections.

**Interrogatory No. 1:** Monster's response does not provide support for each counterclaim, it does not state a single fact to support its contentions, and it does not identify a single document to support its contentions. With respect to its trade dress, the Interrogatory response should, but does not, identify what features of its HDMI cable are protectable or protected by trade dress. Intec requested Monster to supplement, but received no response.

**Document Request Nos. 64, 65, 68-72, 74, 75, 77-83, 85-91, 93-95, and 97-104:** Monster's responses indicate that it would provide "representative" documents that "it can readily locate" that "evidence use in commerce" or "evidence use in commerce, advertising and promotion of products under marks [or HDMI trade dress] forming the basis of its counterclaims against Intec." However, the documents Monster has produced are not sufficiently responsive.

These 35 documents requests are not duplicative of one another so as to only cover use, advertising, and promotion. Intec has specifically tailored its requests seeking information it needs to prove infringement, ascertain damages, and defend against multiple counterclaim counts. Yet Monster has failed to produce or produced minimal documents relating to, *inter alia*,

marketing strategies or plans for expansion (Nos. 65, 81, 99), supporting sales documents to corroborate alleged sales totals (Nos. 68-70, 97), sales data for IDOCK and HDMI cables (Nos. 69, 97), target market studies and reports for the counterclaim marks (No. 71), expansion plans (No. 74), valuations (No. 75), representative samples (Nos. 77, 85), labels and packaging materials (No. 78), letters, memoranda, and other communications (*e.g.*, emails) (Nos. 79, 85), invoices and purchase orders (Nos. 80, 85), contracts, assignments and licenses (Nos. 82, 93, 104), consumer complaints as to the counterclaim marks and trade dress (Nos. 88, 102), adoption of its marks and trade dress (Nos. 89, 101), ownership documents (No. 90), surveys, studies or opinions (Nos. 91, 103).

Moreover, it is not within Monster's discretion to cherry-pick "representative" documents for these requests, many of which seek information related to Monster's counterclaims that it decided to bring into this action. Nor is Monster's burden of production limited to those documents that can be "readily located." If Monster has produced all responsive documents to any of these responses, or if no responsive documents exist, it should confirm so in writing. Indeed, Intec's May 1, 2012 letter requested such confirmation, but none was ever received.

Document Request Nos. 91 and 103 in particular request surveys, studies, and opinions. Monster's 30(b)(6) witness has provided testimony that there are documents responsive to these requests, yet none has been produced. All searches and search results relating to the use and registration of JAMZ and the counterclaim alleged marks and trade dress should be produced. The searches and search results are not protected by attorney-client privilege or work product.

**Document Request Nos. 66, 67, and 96:** Monster responds to each of these discovery requests by pointing to its prior disclosures and its briefing exhibits. First, it should be noted that prior discovery and motions did not involve the iTRAVEL alleged mark or the HDMI alleged trade dress. Further, if the documents produced in connection with these prior disclosures and exhibits represent the full extent of all responsive documents, then Monster should confirm so in writing. On the other hand, if there are additional responsive documents, they should be produced.

**Document Request No. 92:** Corporate tax returns are clearly discoverable under this Circuit's precedent, and are relevant to damages. *See*, *e.g.*, *Platypus Wear, Inc. v. Clarket Modet & Co.*, No. 06-20976-CIV, 2008 WL 728540, *3 (S.D. Fla. Mar. 17, 2008) (citing *Gutescu v. Carey Int'l, Inc.*, 2003 WL 255589035, at *3 (S.D. Fla. June 25, 2003) and *Maddow v. Procter &*

*Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997). The sensitivity of the corporate tax returns can be protected by appropriate designation under the Protective Order.

**Document Request Nos. 106-109:** Monster refuses to produce documents relating to claims of infringement and lawsuits filed by or against Monster within the last five years. The boilerplate objections on which Monster bases its refusal are addressed above. Positions that Monster has taken in the past with respect to its and others' marks are relevant to, *inter alia*, the scope of protection that should be given to the JAMZ mark and to the issue of Monster's willful infringement.

**Document Request Nos. 110-122:** Intec has requested all documents supporting the testimony of Tim Pryde and Homan Emami related to the various topics listed in Monster's pretrial witness list. Monster has objected to this interrogatory on numerous grounds. All of the boilerplate objections are improper for the reasons stated above. Additionally, Monster's refusal to produce any of these documents prior to the Pretrial Conference "in the manner and at the time required under Rule 16(a)(3)" is without merit. Intec is entitled to all documents Monster intends to use related to its trial testimony and all documents supporting the testimony for these witnesses. The Federal Rules are intended to avoid trial by ambush and Monster's position is an attempt to withhold evidence until the eve of trial.

## CONCLUSION

Intec respectfully requests that this Court require Monster to satisfy its discovery obligations and supplement its production to address the deficiencies noted above.

## CERTIFICATION UNDER LOCAL RULE 7.1(A)(3)

I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so.

May 16, 2012                                    /s/David S. Taylor/
                                                David S. Taylor
                                                Counsel for Plaintiff Intec, Inc.

Dated: May 16, 2012                             Respectfully submitted,
                                                PERETZ CHESAL & HERRMANN, P.L.
                                                Attorneys for Plaintiff
                                                Miami Center – Suite 1750
                                                201 So. Biscayne Blvd.
                                                Miami, Florida 33131

{00027656.1 : 5\16\2012 05:22 PM }

5

Telephone: (305) 341-3000
Facsimile: (305) 371-6807

By: /s/ Steven Peretz
 Steven Peretz
 Fla. Bar No. 329037
 speretz@pch-iplaw.com
 Michael B. Chesal
 Fla. Bar No. 775398
 mchesal@pch-iplaw.com

and

BERENATO & WHITE, LLC
Attorneys for Plaintiff
Suite 240
6550 Rock Spring Drive
Bethesda, Maryland 20817
Telephone: (301) 896-0600
Facsimile: (301) 896-0607
Joseph W. Berenato, III- of counsel
jberenato@bw-iplaw.com
John M. White- of counsel
jwhite@bw-iplaw.com
Matthew W. Stavish- of counsel
mstavish@bw-iplaw.com
David S. Taylor-of counsel
dtaylor@bw-iplaw.com

## CERTIFICATE OF SERVICE

I, Steven I. Peretz, do hereby certify that on this 16th day of May, 2012, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the persons listed on the below Service List:

By: /s/ Steven I. Peretz

## SERVICE LIST

Jorge Espinosa
Florida Bar No. 779032
Email jespinosa@etlaw.com
Michael E. Tschupp
Florida Bar No. 34656
mtschupp@etlaw.com
ESPINOSA TRUEBA PL
3001 SW 3rd Ave.
Miami, Florida 33129
Telephone: (305) 854 0900
Facsimile: (305) 285 5555
*Attorneys for Defendant via CM/ECF*

Steven Peretz
Fla. Bar. No. 329037
speretz@pch-iplaw.com
Michael B. Chesal
Fla. Bar No. 775398
mchesal@pch-iplaw.com
PERETZ CHESAL & HERRMANN, PL
Miami Center – Suite 1750
201 So. Biscayne Blvd.
Miami, Florida 33131
Telephone:  (305) 341 3000
Facsimile:  (305) 371 6807

Robert W. Payne (pro hac vice)
Email rpayne@lgpatlaw.com
Christopher J. Passarelli (pro hac vice)
Email:  cpassarelli@lgpatlaw.com
LARIVIERE, GRUBMAN & PAYNE, LLP
P.O. Box 3140
Monterey, CA 93942
Telephone: (831) 649 8800
Facsimile: (831) 649 8835
*Attorneys for Defendant via CM/ECF*

Joseph W. Berenato, III (pro hac vice)
jberenato@bw-iplaw.com
Matthew W. Stavish (pro hac vice pending)
mstavish@bw-iplaw.com
David S. Taylor (pro hac vice)
dtaylor@bw-iplaw.com
BERENATO & WHITE, LLC
6550 Rock Spring Drive
Bethesda, Maryland 20817
Telephone:  (301) 896 0600
Facsimile:  (301) 896 0607
*Attorneys for Plaintiff via CM/ECF*